Counsel, good morning. Good morning, Your Honors. May it please the Court. My name is Charlene Rajan, and I, along with my co-counsel, Fred Schreiber, represent the appellants. I would like to reserve two minutes for Mr. Schreiber on rebuttal. The District Court dismissed the complaint on the belief that we were precluded from establishing priority of use in commerce of the registered trademark scrap because the Second Circuit in a prior litigation determined that use of the mark could not be established when disposing of common law trademark claims. That ruling was incorrect, and we asked this Court to reverse it for two reasons. First, as a preliminary matter, the rights asserted in this complaint arose several years after the ink dried on the order in the prior litigation. And second, preclusion was improper because the issue of priority of use in this litigation was not identical to the issue previously litigated because of the different standard application in both courts. To my first point, in this litigation, we are asserting rights that began in 2012 when the scrap mark was registered. To clarify, we are not relitigating infringement that occurred prior to that time, nor attempting to revive the common law claims that were disposed in that action. However, in order to establish ownership rights in the registered trademark scrap, it is true that Silverstein must have used that mark in commerce prior to Fox using it when it released the Ice Age film. Which brings me to my second point. Although the courts in the prior litigation had not found that Silverstein had not used the mark in commerce, we are not precluded in this action from establishing requisite use. Issues must be identical to preclude inaction. And although minor variations do not escape preclusion, when courts apply significantly different standards, they decide different issues. Tell me what the difference really is between the Second Circuit standard and the Ninth Circuit standard, as you understand it. The difference of how the Second Circuit applied the standard in the prior litigation is that they focused on the use being grounded in the sale of goods bearing the mark. Specifically, in this case, the prior litigation, the court determined that because Silverstein had not sold any product or goods bearing the scrap mark in commerce, she could not establish priority of use. Here in the Ninth Circuit, the court has adopted a totality of circumstances test, which balances several factors to determine and give credence to pre-sales activity, such as marketing and promotions, which can establish use even if no actual sale of goods ever occurred. Go ahead. Thank you, Your Honor. Neither court considered in the prior litigation the weight of such pre-sales activity when analyzing use. Rather, the courts reiterated in that action that advertising and marketing could not establish use alone. And as this Court expressed in the Reardon case in 2012, its rule is very different because it reflects a movement away from the bygone approach of requiring that goods require, or that use requires goods being sold bearing the mark. Notably, the market presence of the pre-sales activity pled in the complaint need not outshine that of her competitor, Fox, in order to establish priority of use. So I understand your argument about the different standards in the Second Circuit and the Ninth Circuit. What I'm not understanding is what factually is different. What infringement are you alleging now that wasn't involved in the Second Circuit case? The rights in this action relate specifically and only to the registered trademark right that arose as soon as the scrap markers registered on the supplemental registration. The registration makes no difference to infringement. Thank you, Your Honor. To clarify, and perhaps I'm not saying this clearly, we're only looking at infringement that occurred in 2012 to the current. The white infringement was that that was different than that involved in the Second Circuit case. Since the Second Circuit case, the Ice Age series has grown exponentially, and year after year there are different TV series, movies, films that have come out, all kinds of media that Fox has been able to implement into the market. After 2012 specifically, I believe there was a movie just exclusively involving the character scrap using the marked scrap as well. So there has been new films, new TV animated series that infringe on Ms. Silverstein's registered mark. But if Fox had the right to use it before 2012, all these things are just derivative of that right. They are derivative of the right, but I don't believe that their scrap mark is registered on the principal register. We at least have registration on the supplemental, which gives us some rights. I mean, granted, it's not prima facie evidence of ownership of the mark or validity of the mark, but supplemental registration means something. And it gives Silverstein a brand-new statutory claim for infringement, and it's a mark holder, essentially, allowing her the opportunity to prove secondary use to show that the mark was valid. She has not been given that opportunity to prove secondary use in this action, and if we're reversed back to the district court, we intend to prove that up from our complaint. Going back to B&B hardware, here we have significantly more than just minor variations among a couple factors in the factor test in both courts. We are talking about applying the standard on different sides of the spectrum. On one side, in the prior litigation, there was no factor test, nor any analysis that would permit pre-sales activity alone to establish use. On the other side, we have this circuit's totality of circumstances test, which does permit sales activity to establish use. The district court in this action never analyzed this circuit's totality of circumstances test in determining whether or not the standard applied in both forums were the same. The court summarily concluded that because both claims in both actions require a finding of use in commerce, that the issues were the same and the standards were identical, despite or irrespective of how the courts applied the standard, no matter how great the difference. And that's the reason why the district court erred in its ruling, and it should be reversed. Wait a minute, let me ask a question. The parties are the same in both cases, right? That's correct. The only new party in this action is the LLC Silverstein & Silverstein, which obtained licensing rights. And we're talking about the same object here, the ownership of the scrat mark, aren't we? That's correct, Your Honor. So following up on what my colleague said here, I mean, aren't the facts really similar enough that even if the test in the two circuits might be somewhat dissimilar, if the underlying facts in both cases involve the same parties and lead to a result that is interrelated, why isn't there preclusion? Issue preclusion can be grounded even though the facts of both lawsuits are the same, as the Supreme Court has said before and also reiterated in B&B Hardware. Now, the difference here is that we're looking at new rights that, again, have established in 2012, and we're not trying to relitigate old claims that died in the past. We're not trying to relitigate old issues. And here in this circumstance, the standards are not just somewhat dissimilar. They're greatly different. And as B&B Hardware, the opinion recognizes that the circuit court, lower court in that case, had sound reasoning to initially deny or issue preclusion because there were differences in the factor test. In B&B Hardware, though, the Supreme Court noted that when there's only minor variations of the test, then it would not escape issue preclusion. Here, there are significant differences such that the courts in both forums would be deciding different issues. I see that my time has elapsed. I'd like to reserve the rest of my time for Brett Trevor, unless there's any other questions. Thank you, Your Honors. Good morning. May it please the Court. Bill Brewster, representing the appellees. A fundamental prerequisite for the claim that they're asserting in 2015 is the requirement of priority of use. There is no dispute about that. That is not possible. That same question, priority of use, was the ultimate fact decided as a matter of law. It was decided as a matter of law by the Southern District of New York in 2004 and affirmed by the Second Circuit in 2007. Did the Second Circuit say that there have to be actual sales? They did not, Your Honor. It would be useful to start with what the district court actually said, and I quote, there can be no confusion as to the source of a product if there is no product. They then stop. But the court goes on. What page are you on? I'm sorry. This is the opinion of the district court, the last page, 633. Okay. The head notes are 20 and 21. It's the top left. I got it. Silberstein distributed items emblazoned with the Scrat logo, but her avowed purpose in doing so was to generate interest in Scrat, not to differentiate or identify the origin of the goods, which were merely vehicles for the logo. What they held, Your Honor, was that she had used it, and she had used it in various ways, but she hadn't used it as a trademark. She'd made ornamental use. That's very consistent with what the trademark, what the U.S. Patent and Trademark Office ultimately did. A registration on the supplemental register is not the same as the principal register. It does not create the same rights. And, in fact, when Ms. Silberstein filed her statement of use, the U.S. Patent and Trademark Office said, We reject your application on the grounds that your use is not a trademark use. It's an ornamental use. She argued about that, and that was ultimately sustained by the trademark examiner, which is why this application was amended to the supplemental register. So there's a fundamental difference between saying there wasn't use and there's not trademark use. You can sell lots of T-shirts with an image on it, but if the patent office or the court views that as an ornamental use and not a trademark use, then you don't have sufficient use in order to establish trademark rights, and that's exactly what happened here. This is not a ---- What is the test in the Second Circuit that that was the question I was asking? Does the Second Circuit require actual sales? They do not, Your Honor. What the Second Circuit ---- Just a second, counsel. So the Second Circuit said she never actually sold scrap products as a course of business. This is on the appeal. The Second Circuit said the right to a mark exists only as a right pertinent to an established business or trade in connection with which the mark is employed. And then their decision turns on the fact that she never actually sold scrap products as a course of business. So how can you say that they're not requiring a sale? So what they're saying, Your Honor, is that she wasn't making trademark use. The record was clear at the district court in the Southern District of New York that there had been products. Again, that's what the district court said, is that there had been products. But what they're saying is, and it's not as artful as I would like, but what they're saying is there's not trademark use, Your Honor. No, what they're saying is there's no sales. Even the district court says there can be no confusion as to the source of a product if there is no product. And they say mere advertising and promotion of a mark in this country are not enough to constitute use of the mark in commerce. So as to bring, what they said, what they were saying is she advertised scrap, she promoted scrap, it was like a potential as a potential for selling scrap. And I think it's really pretty clear from other Second Circuit cases that they do require a sale. My view, what I think is there are two different tests in the Second Circuit and the Ninth Circuit. I'm not sure right now if I have a conclusion as to which is the correct test. But even that being said, it seems like there's a little bit of farm shopping going on and maybe trying to take two bites of the apple and that somehow we ought not to let this happen. But I don't think you can not let it happen by saying there's not two separate tests. So let's assume there's two separate tests. I think that makes this easier. If there are two separate tests, we're still talking about two separate tests for the same standard, whether it's use in commerce under the Lamb Act. The issue about having a registration, even if it was a principal registration, is saying we have a different claim. It's not saying the issue wasn't decided. Your Honor asked the question, the allegations are that the movie Ice Age and the merchandising and licensing started in 2002. In order to establish priority in this case, they have to leapfrog back behind the priority that exists as of 2002. They can't go back in time and leapfrog to that. And that's their problem is they can't establish priority as a matter of law. That's, again, what the trademark trial and appeal board held when it, after this underlying litigation in the Second Circuit concluded, Fox moved to dismiss the use-based applications that had been made in the trademark trial and appeal board affirmed on the grounds of issue preclusion. It said her applications when filed, the ones she filed on the principal register, were void because she could not establish use as of the time they were filed. So there is issue preclusion even if a registration were to issue subsequently because they can't overcome the priority of the use from 2002. There's no way to go back in time for them to leapfrog that. So, Fox, the movie Ice Age came out in 2002? Yes. And you're saying that's the first sale? So, Your Honor, the descriptions of this activity are in paragraphs because we have to assume what they say is true. Those are in paragraphs, I believe, 48 and 50 of the complaint. They are that since 2002, Fox has used scrat and commerce to identify themselves as the source of merchandise, and then in paragraph 50 describes since 2002 using it in films, movie, TV, and licensed merchandise goods. So based on the allegations in the complaint, that's the description of the activity that you have in the record that occurs in 2002. What happened in 2002, though, didn't involve scrat. It involved scrat, S-C-R-A-T, right? Yes, Your Honor. Scrat is the character in the Ice Age movie. Character, right. The question that Your Honor gets to about there being an issue here is that issue preclusion most frequently arises if we're talking about a state court finding and whether under a different standard applies in federal court. As an administrative body, does that apply to your decision? Here we are talking about the same issues by the same parties against the same parties within the same legal system. It's not a question of whether the Second Circuit decision is wrong. The Second Circuit decision could be wrong, but that's not a basis for this court to say that issue preclusion doesn't hold. So, again, even assuming the tests are different, and I don't necessarily agree with that, Your Honor. But the next issue is this issue of the supplemental register, and I've mentioned it. Ms. Silberstein filed applications that were use-based applications. After the decision in the Second Circuit, the Trademark Trial Appeal Board granted Fox's motion to dismiss those use-based applications, saying, here, there is no genuine issue of material fact that in the federal case, the parties hereto litigated the issue of applicants' alleged trademark use, or that the court's final decision on the merits held that applicant had not used the mark. Furthermore, the court examined applicants' purported evidence of use at the time the applicant filed the involved application. Therefore, applicant is barred by collateral estoppel from asserting use of Scrat at the time she filed her application. In addition, when that application matures, again, the trademark office rejects it on the basis that her use, she submits a specimen, a statement of use. And they, when she did that, they rejected it on the basis that it wasn't a trademark use, that it was ornamental. That's how it ends up on the supplemental register. So the supplemental register doesn't create. Can I just ask you a question here? The district court relied entirely on collateral estoppel in dismissing the complaint with prejudice. Do we, can we go beyond that, other than to say that that was an error, if we find that there is no collateral estoppel because of the difference in tests? So, Your Honor, if there is a difference in tests, it still doesn't mean that there wasn't an issue decided under that standard. So the standard is, is there. Under what standard? The federal, the Lanham Act, is there use in commerce. That's the standard. Section 1127, that's what. You mean if the Ninth Circuit says that you can't establish use in commerce, or that you can, you can establish it, even though you haven't sold anything. Let's just take this as a premise. Ninth Circuit says you can establish it, even though you haven't sold anything. The Second Circuit says you cannot establish it unless you have sold something. Now, if there's that, and they obtain a decision from the Second Circuit, let's say it's based on the fact they haven't sold anything. And the Ninth Circuit has said the opposite. You can say there's still collateral estoppel? So, Your Honor, yes. Imagine that the day after the Second Circuit made its decision, imagine instead of waiting 10 years that the plaintiffs walked into the Central District of California and filed a new complaint. And they said, we're alleging that this is infringing our rights. And somebody said, what, didn't the Second Circuit just decide that? They said, well, you have a different standard here. You have the same standard, but you have a different test that you would apply. So I am coming here, I am forum shopping, because I like your rule better. Now, again, plaintiffs chose to file the lawsuit in New York, but under the theory that the law is different, and therefore there's not issue preclusion, that lawsuit could have been filed the next day in the Central District of California. And the entire basis for issue preclusion and collateral estoppel is the argument that you don't want to have inconsistent decisions. Once the issue is finally decided, once the Southern District made its decision and the Second Circuit affirmed on that issue, even if a different test is applied, and this isn't just for this case, it would be every case where there's a split in circuits, the party that had a decision they didn't like would pick up and move to another circuit. I'm inclined to agree with that principle, but they say they have new claims, different claims than those that were at issue in the Second Circuit. What's your response to that? Twofold, Your Honor. First, they don't have new claims because they don't have any substantive rights created by that supplemental register registration. Second, the rights, whatever rights were created by that registration in 2012, never can leapfrog the use of Ice Age and the merchandising and licensing that happened in 2002. So Fox is going to have priority. They can't establish priority use on the basis of any conduct that has occurred since 2007, in 2012 with the supplemental registration or anything else. Thank you. Thank you. All right. We gave your opponent an extra few minutes, so if you need a couple of minutes. I appreciate that, Your Honor. Brett Schreiber on behalf of the appellant.  Justice Wardlaw got it right. Priority of use in the Second Circuit requires actual sales. It makes sense. That was the Industrial Revolution, the creation of widgets. You had to sell your widgets to establish use. We're in the Ninth Circuit. We're a marketplace of ideas, creative people, Hollywood, Silicon Valley. And so I think the Court has got that right. There are two distinct standards here. But does that really make a difference if the underlying trademark issues are unchanged? I mean, why does what you say make a difference? And that's precisely where I was going to go, Justice Daniel. I'm a judge. I'm not a justice. Go ahead. We're all judges. Fair enough. I think, again, it was an easy decision for the lower court to make. It's easy to look at this on a face value, on a superficial level and say it's the same parties, it's the same facts. You're forum shopping, which I'll address momentarily. Get out of here. Don't you, I mean, if we were to say that the Ninth Circuit standards here, don't your rights then, wouldn't they go all the way back and undo the Second Circuit decision? Wouldn't you have a right, wouldn't you have a claim on the original Ice Age? My response, no. My response to that is too cold. Why not? Well, because we're saying that the rights that we are asserting in this litigation start in 2012, at the time of supplemental registry. And here's why that's important. There's been a lot of talk over the last 10 minutes and through the briefing about this leapfrogging. I think the same issue could be said for Ms. Silberstein. Absent a DeLorean that went 88 miles an hour with a flex capacitor, she could not have gone in 2002 or 2007 to have filed a case on violation of her statutory, her registered trademark rights. They didn't exist. So this isn't splitting causes of action. Do they even exist now if she never had priority of use? They absolutely exist now. And the reason why they exist now, and again, we've not suggested that it's a principal registry, it's a supplemental registry, but it's something. And she has to do what she's doing today to fight for those rights. Otherwise, she will lose them on the supplemental registry. So she has every right to assert those claims here in this district. What right does the supplemental registration give her if she never had priority of use to begin with? Well, it gives her the right to exclude and it gives her the right to bring a claim for continued violation of her registered trademark rights. And that's exactly why we're here. And so I think fundamentally to address this notion of forum shopping, I think it's important to note that reversing the district court will not result in some mass reversal of common law trademark claims. Again, there was some suggestion of, oh, there was a leapfrog in some 10-year gap. No. Ms. Oberstein fought Fox for a number of years in front of the TTAB. She ultimately was able to receive supplemental registry, and Fox's opposition was dismissed with prejudice. That says something. That's significant. This wasn't her losing one day and then coming into the Ninth Circuit the next day. No, there's a very important part of that story that was missed by counsel for Fox, which is the 7- or 10-year odyssey in front of the TTAB, where ultimately Ms. Oberstein prevailed. And so I think at the end of the day, Your Honors, I don't know how familiar the court is with the Ice Age character Scrat, the squirrel rat, but I'll leave you with this metaphor and simply say that the Ice Age character has an acorn, okay? And throughout the story, someone or something is trying to take his acorn. I think it's an apt metaphor here. Ten years ago, Ms. Oberstein had a common law acorn. She misplaced it, as Scrat sometimes tends to do. Fox ran up and picked it away and ran off with it. Flash forward to 2012. She now has a registered acorn, a different right, and she was holding onto it loudly and proudly, displaying it to the world, and Fox continues to infringe upon it. The district court. Has Fox ever sued her for trademark infringement? No. I've got one other question. In the district court's decision in the central district, it says the following. Plaintiff's argument that the Ninth Circuit and Second Circuit apply the, quote, use and commerce, unquote, standard differently is unavailing. If federal law provides a single standard, parties cannot escape preclusion simply by litigating anew in tribunals that apply one standard. And it cites the B&B Hardware, Inc., holding that the trademark trial and appeal board, TTAB, and the Eighth Circuit's minor variations in application of the likelihood of confusion standard did not defeat preclusion. The use and commerce issue is identical. Respond to that. I would simply say that the court's order, the district court's order, was completely devoid. It was unburdened by any analysis of this factorial, multifactorial test that this circuit applies. The court simply took the easy route, same parties, same players, same facts, get out of here. The order reads as much. It's completely devoid of any analysis of her presale activities and of all of the other very important factors that matter to this circuit as we look at registered trademark rights in the marketplace of ideas that is the Ninth Circuit. Thank you. Thank you, counsel. Case just argued will be submitted.
judges: Reinhardt, Wardlaw, Daniel